UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11:14-cv-20744-RLR

FRANCOIS ROBERT GEVAERTS,
PAUL CHRISTIAN HOLSTEIN GEVAERTS,
ALEXANDER CASPER HOLSTEIN GEVAERTS,
PIETER SCHAFFELS, AND SCHAFFELS
BEHEER B.V., individually and
on behalf of all others similarly situated,

       Plaintiffs,

v.

TD BANK, N.A., DEBORAH C. PECK,
DENNIS MOENS, SIMON FRANCISCUS
WILHELMUS LAAN, WATERSHED
 LLC, ZILWOOD S.A., CRYSTAL
LIFE CAPITAL, S.A., RUNNING2
LIMITED, BEST INVEST EUROPE,
LTD, JENNIFER J. HUME, JENNIFER J.
HUME, C.P.A., P.A.,

       Defendants.

_____/

**ORDER PRELIMINARILY APPROVING CLASS SETTLEMENT,**
**CERTIFYING SETTLEMENT CLASS, AND APPROVING NOTICE PROGRAM**

THIS MATTER is before the Court on Plaintiffs' Unopposed Motion for Preliminary

Approval of Class Settlement, for Certification of the Settlement Class, and Approval of the

Notice Program [D.E. 90].   Plaintiffs move for Preliminary Approval of the Settlement

Agreement and Release attached as Exhibit A to Plaintiffs' Motion for Preliminary Approval

("Settlement" or "Agreement"), which will resolve all claims against defendant TD Bank, N.A.

("TD Bank" or "the Bank") in this lawsuit.   As described in further detail below, the Settlement

provides substantial relief for the Settlement Class, and its terms are well within the range of

reasonableness and consistent with applicable case law.   Consequently, the Court grants Preliminary Approval, certifies the Settlement Class, and approves the Plaintiffs' proposed Notice Program.

## I.      **INTRODUCTION**

In 2014, Plaintiffs sued on behalf of themselves and all others similarly situated for losses that stemmed from the sale of fractional shares in life settlements to investors.   The Plaintiffs alleged that the offering materials related to these investments assured investors that a licensed attorney, Deborah Peck, would serve as escrow agent and trustee and would safeguard their investment funds in attorney trust accounts at Defendant TD Bank.   Plaintiffs claimed that the Defendants, including TD Bank, knew that the Plaintiffs' investments were not safe.   Instead, the Plaintiffs alleged that the funds held at TD Bank were misappropriated, commingled, and overdrawn, despite the fact that TD Bank had, years before and regularly thereafter, voluntarily entered into an agreement with the New Jersey Bar to monitor and report such misconduct.   The Plaintiffs claimed that as a result of the illegal conduct of the Defendants, the Plaintiffs lost more than $200 million.

TD Bank argued that it was not responsible for the investor losses.   TD Bank claimed that it did not create, manage, or account for the trusts that the Plaintiffs invested in and did not communicate, advise, or solicit the Plaintiffs' investments.   TD Bank argued that it provided routine banking services to Ms. Peck, and that while some of the investor funds were held in TD Bank accounts opened by Ms. Peck, none of the investors were TD Bank customers.   TD Bank also denied Plaintiffs' allegations regarding overdrafts in Ms. Peck's trust accounts.   TD Bank argued repeatedly that the Plaintiffs' claims will fail because the Plaintiffs cannot establish that TD Bank had actual knowledge of the fraud, it did not substantially assist in the fraud, and that it did not owe any legal duties to the investors.

The parties have actively litigated this lawsuit for nearly two years. The parties engaged in extensive discovery which involved the production of millions of pages of documents from multiple continents and in numerous foreign languages. The parties also briefed and argued a motion to dismiss and the Plaintiffs took the deposition of a key TD Bank employee in its Anti-Money Laundering Department before the parties agreed to mediate. The lawsuit involved sharply opposed positions on several fundamental factual and legal questions, including whether TD Bank had actual knowledge of the fraud and what conduct constitutes actual knowledge, whether TD Bank substantially assisted in the investment fraud, and whether TD Bank owed non-customers any legal duties.

After surviving TD Bank's Motion to Dismiss, reviewing millions of pages of documents and taking a key deposition, the Plaintiffs and TD Bank agreed to mediate on June 24, 2015. After a full day mediation, the Plaintiffs and TD Bank reached agreement on the material terms of the Settlement. After mediation, TD Bank and the Plaintiffs had numerous detailed discussions to address the terms of the Settlement. Once those issues were resolved, the Agreement was finalized and executed by TD Bank and the Plaintiffs.

Under the Settlement, all Settlement Class Members who do not opt-out will automatically receive their *pro rata* share of the Settlement Fund. To determine the amount owed each Settlement Class Member, the Plaintiffs' experts will use the available data, including in particular bank records, to determine the amount each Class Member was damaged (that is, their net investment losses) reduced to their appropriate *pro rata* share of the Settlement Fund. The Court finds that the Settlement is reasonable and fair based on the $20 million payment from TD, which had formidable defenses to Plaintiffs' liability arguments. In addition to the $20 million Settlement Fund, TD Bank agreed to pay all of the fees and costs incurred in connection with the

administration of the notice program and the settlement and the calculation and verification of those losses, up to $150,000.

## II.    STATEMENT OF FACTS

### A.    Factual Background

#### 1.    Procedural History

Plaintiffs filed their Complaint on February 28, 2014.  [D.E. 1].  On July 11, 2014, TD Bank filed its Motion to Dismiss Plaintiffs' Complaint.  [D.E. 24].  On August 12, 2014, Plaintiffs' filed their First Amended Complaint.  [D.E. 37].  On August 26, 2014, TD Bank filed its Motion to Dismiss Plaintiffs' Amended Complaint.  [D.E. 44].  The Court heard oral argument on TD Bank's Motion to Dismiss on October 17, 2014 and denied TD Bank's Motion to Dismiss on October 30, 2014.  [D.E. 71].  TD Bank filed its Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint on November 13, 2014.  [D.E. 77].

The parties entered into a Protective Order on the Production of Documents and Electronically Stored Information on September 23, 2014.  [D.E. 54].  Thereafter, the parties produced millions of pages of documents and information, some of which was in Dutch and other languages and which required extensive translation.  Given the volume of documents produced by the parties, thousands of hours of attorney time was spent reviewing and coding the documents not only for production but also for review in the case.  After completing this document review project, Plaintiffs took the deposition of a key TD Bank employee in June 2015.

#### 2.    Settlement Negotiations

Beginning in the spring of 2015, Plaintiffs' counsel and TD Bank initiated preliminary settlement discussions.  The preliminary discussions resulted in the scheduling of mediation.  On June 24, 2015, Plaintiffs' counsel and TD Bank participated in mediation with retired United

States District Court Judge John Martin.  During that mediation, Plaintiffs and TD Bank reached agreement concerning the material terms of the Settlement.   Beginning July 15, 2015, Plaintiffs' counsel, Plaintiffs, and TD Bank executed a Settlement Agreement memorializing the terms of the Settlement, subject to Court approval.

### B.     Summary of the Settlement Terms

The Settlement's terms are detailed in the Agreement attached as Exhibit A to Plaintiffs' Motion for Preliminary Approval.   The following is a summary of the material terms of the Settlement.

### 1.     The Settlement Class

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  The Settlement Class is defined as:

> All persons who between January 1, 2005 and the present purchased interests or invested in life settlements offered by Quality Investments.  Excluded from the Class are (a) Quality Investments and its principals, officers, directors, and employees, including Deborah Peck, Dennis Moens and Frank Laan; (b) Defendants and their principals, officers, directors, and employees, and (c) any governmental entity.

### 2.     Monetary Relief for the Benefit of the Class

The Settlement requires TD Bank to deposit $20,000,000.00 into an Escrow Account within 14 days following this Court's Order preliminarily approving the Settlement.  In addition, TD Bank will pay all fees, costs, charges, and expenses of notice and administration of the Settlement (including the fees and costs incurred in connection with the administration of the Notice Program, and the calculation, verification, and payment of distributions from the Settlement Fund to Settlement Class Members) in an amount not to exceed $150,000.  If the cost

of notice and administration exceeds $150,000, any costs above that amount will be paid from the Settlement Fund.  The amount of the distribution from the Settlement Fund to which each identifiable Settlement Class Member is entitled shall be determined by Plaintiffs' experts based on the net amount each Settlement Class Member invested in life settlements offered by Quality Investments, reduced to reflect their *pro rata* share of the Settlement Fund.  Thus, all Settlement Class Members who experienced a verified net loss will receive a *pro rata* distribution from the Settlement Fund.

As set forth in the Agreement attached as Exhibit A to the Motion for Preliminary Approval, the amount of the Net Settlement Fund attributable to uncashed or returned checks or other payments sent by the Settlement Administrator will remain in the Settlement Fund for six months from the date that the first distribution check is mailed or payment wired by the Settlement Administrator, during which time the Settlement Administrator will make a reasonable effort to locate intended recipients of Settlement Funds whose payments could not be made.  The Settlement Administrator will make one attempt to re-mail or re-issue those payments.  After that attempt, and within six months plus 30 days after the date the Settlement Administrator mails or wires the first Settlement Fund Payments, any funds remaining in the Settlement Fund will be distributed *pro rata* to those Settlement Class Members who could be located and who received and negotiated payment from the Settlement Fund.  If any uncashed or returned payments remain in the Settlement Fund after that distribution, after one year plus 30 days from the date the first settlement fund payments are mailed by the Administrator, any residual amount remaining will be distributed through a *cy pres* program, as to which the Parties will seek approval from the Court.

### 3. TD Bank And The Class Sign Mutual Releases

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt-out, and TD Bank, will be deemed to have released each other from claims relating to the subject matter of this lawsuit.

### 4. The Notice Program

The notice program proposed by the Plaintiffs is designed to provide the best notice practicable, and it is tailored to take advantage of the information the parties have about the Settlement Class Members.   The notice program is reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the lawsuit, class certification, the terms of the Settlement, Class Counsel's fee application and request for service awards for the named Plaintiffs, and Class members' rights to opt-out of the Settlement Class or object to the Settlement.  The notice and notice program constitute sufficient notice to all persons entitled to notice and satisfy all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirement of due process.

The notice program will use three different methods to provide notice:  (1) direct mail postcard notice ("Mailed Notice") to all identifiable Settlement Class Members; (2) publication notice ("Published Notice") designed to reach those Settlement Class Members for whom direct mail notice is not possible or successful; (3) and the "Long Form" notice with more detail than the direct mail or publication notices, that will be available on the Settlement website.  The notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights, including a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from or opt-out of the Settlement Class (45 days from when notice is mailed out); a date by which Settlement Class Members may object to the Settlement (45 days from when notice is mailed out); and the address

of the Settlement Website at which Settlement Class Members may access the Agreement and other related documents and information. In addition to the information described above, the Long Form Notice will also describe the procedure Settlement Class Members must use to opt-out of or object to the Settlement. All opt-outs and objections must be received by the last day of the Opt-Out Period, which will be 45 days from when notice is mailed out.

### (a) The Mailed Notice Program

The administrator will mail to all Settlement Class Members postcards substantially in the form attached as Exhibit B to Plaintiffs' Motion for Preliminary Approval (the "Initial Mailed Notice"). The administrator will perform reasonable address traces for all Initial Mailed Notice postcards that are returned as undeliverable and will re-mail the postcards to those Settlement Class Members whose new addresses were identified through address traces. However, because Plaintiffs' counsel has the addresses for nearly all of the Class Members and because many Class Members have been required to file claims in a separate bankruptcy proceeding, Plaintiffs' counsel states that they are reasonably confident that they have current addresses for nearly all of the Class Members.

### (b) The Published Notice Program

The administrator will administer the Published Notice Program in the manner and using the form of Published Notice substantially in the form attached as Exhibit C to Plaintiffs' Motion for Preliminary Approval, agreed to by TD Bank and the Plaintiffs.

### (c) The Settlement Website

The Settlement Administrator will establish a Settlement Website as a means for Settlement Class Members to obtain notice of, and information about, the Settlement. The Settlement Website will be established as soon as practicable following preliminary approval. The Settlement Website will include hyperlinks to the Settlement, the Long-Form Notice

substantially in the form attached as Exhibit D to Plaintiffs' Motion for Preliminary, this Order, and such other reasonably pertinent and relevant documents.  These documents will remain on the Settlement Website at least until Final Approval.

### 5. Settlement Termination

Either TD Bank or the Plaintiffs may terminate the Settlement if the Settlement is rejected or materially modified by this Court or by an appellate court.   TD Bank also has the right to terminate the Settlement if the percentage of Settlement Class Members who timely opt-out of the Settlement equals or exceeds the percentage specified in a separate letter executed concurrently with the Agreement by TD Bank's counsel and Plaintiffs' counsel.  The number or percentage will be confidential except to the Court, who upon request will be provided a copy of the letter for *in camera* review.

### 6. Class Representative Service Awards

Plaintiffs' counsel seeks, and TD Bank does not oppose, service awards of $10,000 for the collective Gevaerts Plaintiffs and $10,000 for the collective Schaffels Plaintiffs.   The service awards will be paid from the Settlement, and will be in addition to the relief the named Plaintiffs will be entitled to under the terms of the Settlement.  These awards will compensate the Class representatives for their time and effort in the lawsuit, including their time and effort expended in gathering documents responsive to TD Bank's document requests, reviewing pleadings, and for staying informed about the litigation.

### 7. Attorneys' Fees and Costs

Plaintiffs' counsel will request attorneys' fees of up to thirty percent of the Settlement Fund, plus reimbursement of all litigation costs and expenses, which requests TD Bank does not oppose.  TD Bank and Plaintiffs' counsel negotiated and reached this agreement regarding

attorneys' fees and costs only after reaching agreement on all other material terms of this Settlement.

III.    **ANALYSIS**

    A.    **The Legal Standard for Preliminary Approval**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  In exercising that discretion, courts are guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness."  4 Newberg § 11.26.  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).  Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.  *See*

*Manual for Complex Litigation,* Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted). When determining whether a settlement is ultimately fair, adequate and reasonable, courts in this circuit look to six factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. Courts have, at times, engaged in a "preliminary evaluation" of these factors to determine whether the settlement falls within the range of reason at the preliminary approval stage. *See*, *e.g*., *Smith*, 2010 WL 2401149 at *2.[1]

The Court's granting of preliminary approval will allow all Settlement Class Members to receive notice of the terms of the Settlement and will provide them with information on opting-out and how to object, if they should choose to do so. Neither formal notice nor a hearing is required at the preliminary approval stage. The Court may grant such relief upon an informal application by the settling parties. 5 Newberg § 13.12.

**B.     This Settlement Satisfies the Criteria for Preliminary Settlement Approval.**

Each of the relevant factors weighs in favor of the Court granting preliminary approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel, in conjunction with an experienced mediator. Furthermore, a preliminary review of the factors related to the

---

[1] It is currently unnecessary to address the fifth factor related to objections to the Settlement, because at this preliminary stage, notice has not yet been distributed. The Court will, if necessary, address opposition to the Settlement following the Final Approval Hearing.

fairness, adequacy, and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that preliminary approval is appropriate.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay.  Plaintiffs believe that the claims asserted are meritorious and that Plaintiffs would prevail if this matter proceeded to trial. TD Bank denies any potential liability, and has shown a willingness to litigate those claims vigorously.  TD Bank and the Plaintiffs concluded that the benefits of the Settlement outweigh the risks attendant to continued litigation that include, but are not limited to, the Eleventh Circuit's potential interlocutory review of a class-certification order, the time and expenses associated with proceeding to trial, the time and expenses associated with appellate review, and the countless uncertainties of litigation.

### 1.  This Settlement Is The Product Of Good Faith, Informed and Arm's Length Negotiations.

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977);[2] *see also Lipuma v. American Express Co*., 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel"). The Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this lawsuit. TD Bank and Plaintiffs engaged in a formal mediation before an experienced and respected mediator, former United States District

---

[2] In *Bonner v. City of Prichard. Alabama*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit Court of Appeals adopted as precedent all decisions of the Fifth Circuit handed down on or before September 30, 1981.

Court Judge John Martin.  These negotiations were arm's-length and extensive.  *See also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").  Furthermore, counsel for both sides are experienced in the litigation, certification, trial, and settlement of nationwide class action cases.

In negotiating this Settlement, Plaintiffs' counsel had the benefit of having reviewed millions of pages of documents and having taken a key deposition before engaging in mediation. Plaintiffs' counsels' review of that extensive discovery enabled them to gain an understanding of the evidence related to central questions in the lawsuit, and prepared them for well-informed settlement negotiations.  *See Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two Rule 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).  Plaintiffs' counsel was also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to settle them, as a result of similar class action cases Plaintiffs' counsel has brought in the past.

> ### 2. <u>The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate, and Reasonable.</u>

As noted, this Court may conduct a preliminary review of the *Bennett* factors to determine whether the Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted.

> ### (a) <u>Likelihood of Success at Trial</u>

Plaintiffs state that they are confident in the strength of their case, but are also pragmatic in their awareness of the various defenses available to TD Bank, the state of the law on bank

- 13 -

liability to non-customers, and the substantial risks inherent with continued litigation.  As noted above, Plaintiffs avoided dismissal on various theories advanced at the motion to dismiss stage. The success of Plaintiffs' claims in continued litigation, however, turned on questions of actual knowledge of the fraud and TD Bank's substantial assistance in the fraud, which would have arisen again in the context of motions for summary judgment and at trial.  While Plaintiffs believe they could have carried those burdens, the Plaintiffs also recognized that those were substantial burdens to carry and that protracted litigation carried inherent risks that would necessarily have delayed and endangered Settlement Class Members' monetary recovery.  Under the circumstances, Plaintiffs appropriately determined that the Settlement reached with TD Bank outweighs the possible benefits that may result from the risks of continued litigation.  Even if Plaintiffs did prevail at trial, any recovery could be delayed for years by an appeal.  *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).  This Settlement provides substantial relief to Settlement Class Members without further delay.

<strong>(b)    <u>Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement is Fair.</u></strong>

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties."  *Cotton*, 559 F.2d at 1330.  "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *Id.* Courts have determined that settlements may be reasonable even where Plaintiffs recover only part of their actual losses.  *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate").  "The existence of strong defenses to the

claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The $20 million recovery in this case is reasonable, given the complexity of the litigation and the significant risks and barriers that would have continued to loom in the absence of Settlement: possible interlocutory review of the class certification order; motions for summary judgment and other pretrial issues; trial; and appellate review following a final judgment. The additional value of TD Bank's payment of costs up to $150,000 associated with the notice program and administration of the Settlement further enhance the value of the Settlement. Therefore, the Court concludes that this Settlement is a fair and reasonable recovery for the Settlement Class in light of TD Bank's defenses, and the challenging and unpredictable path of litigation Plaintiffs and all Settlement Class Members would have faced absent a settlement.

### (c)    Complexity, Expense and Duration of Litigation

The traditional means for handling claims like those at issue here would tax the court system, require a significant expenditure of public and private resources, and, given the relatively small value of the claims of the individual Class Members compared to the costs of litigation, would be impracticable. Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. One of the most expensive aspects of ongoing litigation of the lawsuit involves the retention of experts required to analyze the Class Members' loss, banking experts to assist on liability, and insurance experts. These experts would be required to analyze substantial amounts of data, prepare expert reports, sit for deposition, and testify at trial. These costs would be enormous. These considerations, and the other considerations noted above, militate heavily in favor of the Settlement. *See Behrens*, 118 F.R.D. at 542 (noting likely "battle of experts" at trial regarding damages, which would pose "great difficulty" for plaintiffs).

### (d)    Stage of the Proceedings

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation."  *Lipuma*, 406 F. Supp. 2d at 1324. The Settlement here was reached after extensive pretrial discovery, including the production and review of more than a million pages of documents produced by the parties, a key deposition, and substantial legal briefing on TD Bank's motion to dismiss. As a result, Plaintiffs were extremely well-positioned to confidently evaluate the strengths and weaknesses of their claims and prospects for success at summary judgment, at trial, and on appeal.

### C.    Certification of the Settlement Class Is Appropriate

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of the proposed Settlement Class will allow notice of the Settlement to issue to inform Settlement Class Members of the existence and terms of the Settlement.  *See Manual for Compl. Lit.*, at §§ 21.632, 21.633.  For purposes of this Settlement only, TD Bank does not oppose class certification.  For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual

issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Here, the numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of more than a thousand class members, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

 "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied.  There are multiple questions of law and fact – centering on TD Bank's actual knowledge of the fraud and substantial assistance in it – that are common to the Settlement Class, that are alleged to have injured all Settlement Class Members in the same way, and that would generate common answers central to the viability of the claims were the lawsuit to proceed to trial.

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied.  *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

Plaintiffs are typical of absent Settlement Class Members because they have sustained the same injuries as a result of TD Bank's alleged practices and conduct in the investment scheme.

Plaintiffs and Plaintiffs' counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Here, Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiffs and the Settlement Class are represented by qualified and competent counsel that have extensive experience and expertise prosecuting complex class actions, including viatical frauds similar to the instant case. Plaintiffs' counsel has devoted substantial time and resources to vigorous litigation of the lawsuit.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiffs satisfy the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to any Settlement Class Member. For example,

each Settlement Class Member's relationship with TD Bank is that of a non-customer and arises from TD's conduct with respect to its alleged actual knowledge of the alleged fraud and substantial involvement in it, which affected all of the members of the Class in the same way. *See Sacred Heart Health Sys.*, 601 F.3d at 1171 ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."). Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3).

> **D.** **The Proposed Notice Program is Reasonably Calculated to Apprise Interested Parties of the Pendency of the Action**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Compl. Lit. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted);

The notice program satisfies these criteria. As recited in the Settlement Agreement and above, the notice program will inform Settlement Class Members of the substantive terms of the Settlement. It will advise Settlement Class Members of their options for opting out of, or objecting to, the Settlement and how to obtain additional information about the Settlement. The

Notice Program is designed to reach a high percentage of Settlement Class Members and it exceeds the requirements of Constitutional due process.

      **E.**      **Final Approval Hearing.**

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will hear all evidence and argument necessary to make its final evaluation of the Settlement.   Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of Final Approval.   The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter a Final Approval Order under Rule 23(e); and whether to approve Class Counsel's application for attorneys' fees and reimbursement of costs and expenses.

**IV.**    **CONCLUSION**

In light of the foregoing, it is ORDERED AND ADJUDGED that the Court hereby:

(1) GRANTS preliminary approval of the Settlement;

(2) CERTIFIES for settlement purposes the Settlement Class pursuant to Rule 23(b)(3) as follows:

> All persons who between January 1, 2005 and the present purchased interests or invested in life settlements offered by Quality Investments. Excluded from the Class are (a) Quality Investments and its principals, officers, directors, and employees, including Deborah Peck, Dennis Moens and Frank Laan; (b) Defendants and their principals, officers, directors, and employees, and (c) any governmental entity.

(3) APPROVES the notice program set forth in the Agreement and as described above and APPROVES the form and content of the notices attached to Plaintiffs' Motion for Preliminary Approval of Class Settlement as Exhibits B-D;

(4) APPROVES the opt-out and objection procedures set forth in the Agreement and set forth above;

(5) APPOINTS Plaintiffs as class representatives;

(6) APPOINTS as Settlement Class counsel David M. Buckner, Seth E. Miles, and Brett E. von Borke from the law firm of Grossman Roth and Ryan O'Quinn from the law firm of O'Quinn, Stumphauzer, & Sloman;

(7) STAYS the lawsuit against TD Bank and suspends all upcoming deadlines pending final approval of the Settlement;

(8) Shall SCHEDULE a final approval hearing in a separate order.

DONE and ORDERED in chambers at Fort Pierce, Florida, this 3rd day of August, 2015.


_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE


Copies furnished to:
Counsel of record
United States Magistrate Judge Dave Lee Brannon