UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11:14-cv-20744-RLR

FRANCOIS ROBERT GEVAERTS,
PAUL CHRISTIAN HOLSTEIN GEVAERTS,
ALEXANDER CASPER HOLSTEIN GEVAERTS,
PIETER SCHAFFELS, AND SCHAFFELS
BEHEER B.V., individually and
on behalf of all others similarly situated,

        Plaintiffs,

v.

TD BANK, N.A., DEBORAH C. PECK,
DENNIS MOENS, SIMON FRANCISCUS
WILHELMUS LAAN, WATERSHED
 LLC, ZILWOOD S.A., CRYSTAL
LIFE CAPITAL, S.A., RUNNING2
LIMITED, BEST INVEST EUROPE,
LTD, JENNIFER J. HUME, JENNIFER J.
HUME, C.P.A., P.A.,

        Defendants.

_____/

**ORDER OF FINAL APPROVAL OF SETTLEMENT   WITH
DEFENDANT TD BANK, N.A., AUTHORIZING SERVICE AWARDS,
AND GRANTING APPLICATION FOR ATTORNEYS' FEES AND EXPENSES**

On October 9, 2015, Plaintiffs and Class Counsel filed their Motion for Final Approval of

Settlement, and Application for Service Awards, Attorneys' Fees and Expenses, and

Incorporated Memorandum of Law ("Motion"), which sought Final Approval of the Settlement

Agreement and Release ("Agreement" or "Settlement") with TD Bank, N.A. ("TD Bank" or "the

Bank").[1]  [D.E. 99].  In support, Plaintiffs filed a declaration from John Scarola, Esq., an expert

_____

[1] This Order incorporates the definitions of terms used in the Agreement attached to the Motion
for Preliminary Approval.  [D.E. 90-1].

in class action law and attorneys' fees, as well as from the Claims Administrator supplementing the factual record to enable the Court to evaluate the fairness and adequacy of this Settlement. [D.E. 99-2, 99-3].  Furthermore, the matter came before the Court on November 5, 2015, for a Final Approval Hearing pursuant to the Court's Preliminary Approval Order dated August 4, 2015 [D.E. 91] and the Court's Order Setting Final Fairness Hearing on August 13, 2015 [D.E. 97].  The Court reviewed all of the filings related to the Settlement and heard argument on the Motion.

After careful consideration of the presentations of the parties, the Court concludes that this Settlement provides a fair, reasonable and adequate recovery for the Settlement Class Members based on the creation of a $20,000,000 common fund.  The Settlement constitutes an excellent result for the Settlement Class under the circumstances and challenges presented by the lawsuit.  The Court specifically finds that the Settlement is fair, reasonable and adequate, and a satisfactory compromise of the Settlement Class Members' claims.  The Settlement fully complies with Fed. R. Civ. P. 23(e), and, thus, the Court grants Final Approval to the Settlement, certifies the Settlement Class, and awards the fees and costs requested by Class Counsel as well as the requested Service Awards for the Gevaerts Plaintiffs and the Shaffels Plaintiffs.

## BACKGROUND

The Court is familiar with the history of this lawsuit, having presided over it for nearly two years.  During that time, the Court has had the opportunity to observe Class Counsel and TD Bank's counsel appear and argue before it.  These attorneys, several of whom have practiced before this Court for many years, are extremely skilled advocates, and vigorously litigated the Action up to the time of the Settlement.  The Settlement is the result of arm's-length negotiations, and the Court so finds.

The present evidentiary record is more than adequate for the Court to consider the

fairness, reasonableness, and adequacy of the Settlement.  A fundamental question is whether the district judge has sufficient facts before her to evaluate and intelligently and knowledgeably approve or disapprove the settlement.  *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n.6 (6th Cir. 1984) (citing *Detroit v. Grinnell*, 495 F.2d 448, 463-68 (2d Cir. 1974)). In this case, the Court has such facts before it in considering the Motion, including the evidence and opinions of Class Counsel and its expert declaration.

### 1.     Factual and Procedural Background of the Action.

In 2014, Plaintiffs sued on behalf of themselves and all others similarly situated for losses that stemmed from the sale to investors of fractional shares in life settlements.  The Plaintiffs alleged that the offering materials related to these investments assured investors that a licensed attorney, Deborah Peck, would serve as the escrow agent and trustee and would safeguard their investment funds in attorney trust accounts at Defendant TD Bank.  Plaintiffs claimed that the Defendants, including TD Bank, knew that the Plaintiffs' investments were not safe.  Instead, the Plaintiffs alleged, the funds held at TD Bank were misappropriated, commingled, and overdrawn, despite the fact that TD Bank had, years before and regularly thereafter, voluntarily entered into an agreement with the New Jersey Bar to monitor and report such misconduct.  The Plaintiffs claimed that as a result of the illegal conduct of the Defendants, the Plaintiffs lost approximately $200 million.

TD Bank argued that it was not responsible for the investor losses.  TD Bank claimed that it did not create, manage, or account for the trusts that the Plaintiffs' invested in and did not communicate, advise, or solicit the Plaintiffs' investments.  TD Bank argued that it provided routine banking services to Ms. Peck, and that while some of the investor funds were held in TD Bank accounts opened by Ms. Peck, none of the investors were TD Bank customers.  TD Bank also denied Plaintiffs' allegations regarding overdrafts in Ms. Peck's trust accounts.  TD Bank

argued repeatedly the Plaintiffs' claims will fail because the Plaintiffs cannot establish that TD Bank had actual knowledge of the fraud, it did not substantially assist in the fraud, and that it did not owe any legal duties to the investors.

The parties actively litigated this lawsuit for nearly two years.  The parties engaged in extensive discovery which involved the production and review of millions of pages of documents and data from multiple continents and in foreign languages.  The parties also briefed a Motion to Dismiss and the Plaintiffs took the deposition of a key TD Bank employee in its Anti-Money Laundering Department before the parties agreed to mediate.  The lawsuit involved sharply opposed positions on several fundamental legal questions, including whether TD Bank had actual knowledge of the fraud and what conduct constitutes actual knowledge, whether TD Bank substantially assisted in the investment fraud, and whether TD Bank owed non-customers any legal duties.

After overcoming TD Bank's Motion to Dismiss, reviewing more than a million pages of documents and data, and conducting a key deposition, the Plaintiffs and TD Bank agreed to mediate on June 24, 2015.  After a full day of mediation, the Plaintiffs and TD Bank reached agreement on the material terms of the Settlement.  After mediation, TD Bank and the Plaintiffs had numerous detailed discussions to address the terms of the Settlement.  Once those issues were resolved, the Agreement was finalized and executed by TD Bank and the Plaintiffs.

**2.      Settlement Negotiations and Proceedings.**

Beginning in the Spring of 2015, Plaintiffs' counsel and TD Bank initiated preliminary settlement discussions.  The preliminary discussions resulted in the scheduling of mediation.  On June 24, 2015, Plaintiffs' counsel and TD Bank participated in mediation with retired United States District Court Judge John Martin.  During that mediation, Plaintiffs and TD Bank reached agreement concerning the material terms of the Settlement.  Beginning July 15, 2015, Plaintiffs'

counsel, the Plaintiffs, and TD Bank executed a Settlement Agreement memorializing the terms of the Settlement, subject to Court approval.

The Court granted preliminary approval of the Settlement on August 4, 2015.  [D.E. 91]. After preliminary approval was granted, the Settlement Administrator sent out the Court approved notice to the 1,122 Settlement Class Members, published the Court approved notice in the *Wall Street Journal* European Edition, and created the Settlement Website with the Court-approved Long Form Notice.  After receiving notice, none of the Settlement Class Members opted out of the Settlement or objected to it.  As discussed below, the Court finds that the Notice Program was properly effectuated, and that it was more than adequate to put the Settlement Class Members on notice of the terms of the Settlement, the procedures for objecting to and opting out of the Settlement, and the rights that the Settlement Class Members would give up by remaining part of the Settlement.

3.     **Summary of the Settlement Terms.**

The Settlement's terms are set forth in the Agreement.  [D.E. 90-1].  The Court now provides a summary of the material terms.

A.     **The Settlement Class.**

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  The Settlement Class is defined as:

> All persons who between January 1, 2005, and the present purchased interests or invested in life settlements offered by Quality Investments.  Excluded from the Class are (a) Quality Investments and its principals, officers, directors, and employees, including Deborah Peck, Dennis Moens and Frank Laan; (b) Defendants and their principals, officers, directors, and employees, and (c) any governmental entity.

## B.      Monetary Relief for the Benefit of the Class.

TD Bank deposited $20,000,000 into the Escrow Account following Preliminary Approval.  That deposit created the Settlement Fund, which will be used to pay: (i) all distributions to the Settlement Class; (ii) all attorneys' fees, costs and expenses of Class Counsel; (iii) all Service Awards to the Plaintiffs; (iv) any residual *cy pres* distributions; (v) any costs of Settlement Administration other than those to be paid by TD Bank; and (vi) additional fees, costs and expenses not specifically enumerated in the Agreement, subject to approval of Settlement Class Counsel and TD Bank.  In addition to the $20,000,000 Settlement Fund, TD Bank is paying all costs and fees associated with Class Notice and Settlement Administration up to $150,000.  Any costs above that amount will be paid from the Settlement Fund.

The amount of the distribution from the Settlement Fund to which each identifiable Settlement Class Member is entitled shall be determined by Plaintiffs' experts based on the net amount each Settlement Class Member used to purchase interests or invested in life settlements offered by Quality Investments, reduced to reflect their *pro rata* share of the Settlement Fund. Thus, all Settlement Class members who experienced a net loss will receive a *pro rata* distribution from the Settlement Fund.

As set forth in detail in the Agreement, the amount of the Net Settlement Fund attributable to uncashed or returned checks or other payments sent by the Settlement Administrator will remain in the Settlement Fund for six months from the date that the first distribution check is mailed or payment wired by the Settlement Administrator, during which time the Settlement Administrator will make a reasonable effort to locate intended recipients of Settlement Funds whose payments could not be made.  The Settlement Administrator will make one attempt to re-mail or re-issue those payments.  After that attempt, and within six months plus 30 days after the date the Settlement Administrator mails or wires the first Settlement Fund

Payments, any funds remaining in the Settlement Fund will be distributed *pro rata* to those Settlement Class Members who could be located and who received and negotiated payment from the Settlement Fund.  If any uncashed or returned payments remain in the Settlement Fund after that distribution, after one year plus 30 days from the date the first settlement fund payments are mailed by the Administrator, any residual amount remaining will be distributed through a *cy pres* program, as to which the Parties will seek approval from the Court.

> ### C.      Class Release.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out, and TD Bank, will be deemed to have released each other from claims relating to the subject matter of the Action.

> ### D.      The Notice Program.

The notice program provided notice to the Settlement Class using three different methods:  (1) direct mail postcard notice ("Mailed Notice") to all identifiable 1,122 Settlement Class Members; (2) publication notice ("Published Notice") designed to reach those Settlement Class Members for whom direct mail notice is not possible or successful; (3) and the "Long Form" notice with more detail than the direct mail or publication notices, which is available on the Settlement website.  The notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights, including a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from or opt out of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; and the address of the Settlement Website at which Settlement Class Members may access the Agreement and other related documents and information.  In addition to the information described above, the Long Form Notice also describes the procedure Settlement Class Members were required to use to opt out of, or object to, the Settlement.

## DISCUSSION

Federal courts have long recognized a strong policy and presumption in favor of class action settlements.  The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).  In evaluating a proposed class action settlement, the court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006) (quoting *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)).  "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).

As explained below, the Settlement here is more than sufficient under Rule 23(e).  It includes a Settlement Fund of $20,000,000, and TD Bank will pay for the fees and costs associated with the Notice Program and Settlement Administration up to $150,000.  All Settlement Class Members who experienced a net loss related to their life settlement investment and did not timely opt out will automatically receive their recovery as a matter of course, without needing to take any action, based on an analysis by Settlement Class Counsel's accounting expert.

### 1.    The Court's Exercise of Jurisdiction Is Proper.

In addition to having personal jurisdiction over the Plaintiffs, who are parties to the Action, the Court also has personal jurisdiction over all Settlement Class Members because they received the requisite notice and due process.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S.

797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998). The Court has subject matter jurisdiction over the Action pursuant to 28 U.S.C. §§ 1332(d)(2) and (6).

### a.   The Best Notice Practicable Was Provided to the Settlement Class.

As discussed above, Notice of the Settlement in the form approved by the Court was mailed to all 1,122 Settlement Class Members. Only nine of those were returned as undeliverable, and the Claims Administrator ran an address search to identify those individuals' current addresses. Furthermore, the Claims Administrator emailed the postcard notice to 659 of the Settlement Class Members for whom Class Counsel had email addresses. Seven of the nine individuals whose postcard notice was returned undeliverable received email notice. Notice of the Settlement was also published in the *Wall Street Journal* European Edition, which is available in the geographic markets where the investors resided. In addition, a special Settlement Website was established to enable Settlement Class Members to obtain detailed information about the Action and the Settlement.

### b.   The Notice Was Reasonably Calculated to Inform Settlement Class Members of Their Rights.

The Court-approved Notice satisfied due process requirements because it described "the substantive claims . . . [and] contained information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05. The Notice, among other things, defined the Settlement Class; described the release provided to TD Bank under the Settlement as well as the amount, manner of allocating, and proposed distribution of the Settlement proceeds; and informed Settlement Class Members of their right to opt out and object, the procedures for doing so, and the time and

place of the Final Approval Hearing.  Further, the Notice stated that Class Counsel intended to seek attorneys' fees of up to thirty percent (30%) of the $20,000,000 Settlement Fund.  In addition to disclosing these material terms, the Notice informed Settlement Class Members that a class judgment would bind them unless they opted out, and told them where they could obtain more information – for example, at the Settlement Website, where a copy of the fully executed Agreement, as well as other important Court documents such as the Motion, can be found.

Accordingly, the Court finds that the Settlement Class Members were provided with the best practicable notice, and that notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).  The Settlement with TD Bank was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so.  Despite that opportunity, there were no objections or opt outs to the Settlement, which speaks favorably of its terms.

### 2.     The Settlement is Fair, Adequate, and Reasonable, and Therefore Final Approval is Appropriate Under Rule 23.

In determining whether to approve the Settlement, the Court considers whether it is "fair, adequate, reasonable, and not the product of collusion."  *Leverso v. SouthTrust Bank of Al., N.A.,* 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable, and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation* (Third) § 30.42 (1995)).  The court is "not called upon to determine whether the settlement reached by the parties is the best possible

deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e):

(1) the existence of fraud or collusion behind the settlement;

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the probability of the plaintiffs' success on the merits;

(5) the range of possible recovery; and

(6) the opinions of class counsel, the class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett,* 737 F.2d at 986.

### a.      There Was No Fraud or Collusion.

The Court readily concludes there was no fraud or collusion behind this Settlement.  *See, e.g., In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties"); *In re Motorsports Merchandise Antitrust Litig.,* 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("This was not a quick settlement, and there is no suggestion of collusion."); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (record showed no evidence of collusion, but to the contrary showed "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd,* 893 F.2d 347 (11th Cir. 1989). The parties vigorously litigated their positions, the mediation was overseen by a highly respected former United States District

Court Judge, and TD Bank is paying a substantial amount of money to settle the Class' claims.

> **b.**   **The Settlement Will Avert Years of Highly Complex and Expensive Litigation.**

This case involves 1,122 Settlement Class Members in a highly complex and international life settlement Ponzi scheme. The claims and defenses are complex. Litigating them has been difficult and time-consuming for all the parties involved. Although this litigation has been pending for nearly two years, recovery by any means other than settlement would require additional years of litigation in this Court and others, including appellate courts. *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 at 317, 325-26 & n.32 (N.D. Ga. 1993) ("adjudication of the claims of two million claimants could last half a millennium").

The Settlement provides immediate and substantial benefits to 1,122 Settlement Class Members. *See In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993) ("The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.") (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive"). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla.

1992) (citation omitted), there can be no reasonable doubt as to the adequacy of this Settlement.

The amount of the recovery is extremely reasonable in light of the risks Plaintiffs faced. The Settlement Fund of $20,000,000 from TD Bank represents approximately ten percent (10%) of the most probable aggregate damages that Class Counsel believes could have been recovered on behalf of the Settlement Class if the Action were successful in all respects.  Approximately ten percent (10%) of the most probable sum Plaintiffs anticipated recovering at trial, which is being paid by one defendant on aiding and abetting claims and who did not initiate the scheme, constitutes a very fair settlement.

> ### c.     The Factual Record is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment Concerning the Settlement.

The Court considers "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 813 (3d Cir. 1995).  At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations."  *Ressler*, 822 F. Supp. at 1555.

Extensive discovery occurred in this lawsuit and the Settlement was reached only after extensive pretrial discovery, including the production and review of more than a million pages of documents and data produced by the parties, a key deposition, and substantial legal briefing on TD Bank's Motion to Dismiss. Discovery afforded Class Counsel insight into the strengths and weaknesses of the claims against TD Bank.  Prior to settling, Class Counsel developed ample information and performed analyses from which "to determine the probability of . . . success on the merits, the possible range of recovery, and the likely expense and duration of the litigation." *Mashburn v. Nat'l Healthcare, Inc*., 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("*Mashburn*").

The advanced stage of the proceedings where the parties reached an agreement to settle supports granting Final Approval.

### d.   Plaintiffs Would Have Faced Significant Obstacles to Obtaining Relief.

The Court also considers "the likelihood and extent of any recovery from the defendants absent . . . settlement."  *In re Domestic Air Transp.*, 148 F.R.D. at 314; *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.").  As the Class' expert John Scarola noted, this case presented significant risks both at the outset and throughout the litigation. TD Bank advanced significant defenses that the Settlement Class would have been required to overcome in any contested proceeding, which included proving TD Bank's actual knowledge of the fraud, its substantial assistance in it, its liability to non-customers, and interlocutory review of any favorable class certification order.  These risks were substantial.

Apart from the risks, continued litigation would have involved substantial delay and expense.  The Plaintiffs would have been required to certify the class, face the prospect of interlocutory review of any Order granting class certification, summary judgment, a trial on the merits, and a post-judgment appeal.  The uncertainties and delays from this process would have been significant.  Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement cannot be seen as anything except a fair compromise. *See, e.g*., *Bennett v. Behring Corp*., 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" creating "great uncertainty as to the fact and amount of damage," making it "unwise

[for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

### e.     The Benefits Provided by the Settlement Are Fair, Adequate, and Reasonable When Compared to the Range of Possible Recovery.

In determining whether a settlement is fair in light of the potential range of recovery, the court is guided by the "important maxim[]" that "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens*, 118 F.R.D. at 542.  This is because a settlement must be evaluated "in light of the attendant risks with litigation."  *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y. 2003); *see Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement."); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[T]he very essence of a settlement is . . . a yielding of absolutes and an abandoning of highest hopes.") (internal quotation omitted).  Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief." *Warren*, 693 F. Supp. at 1059; *see, e.g.*, *Great Neck Capital Appreciation Investment P'ship, L.P. v. PriceWaterHouseCoopers, L.L.P.*, 212 F.R.D. 400, 409-410 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.").  The Settlement provides substantial value to the Settlement Class Members.   Under the Settlement, Plaintiffs and the Settlement Class Members will recover $20,000,000 in cash, and TD Bank has agreed to pay all fees, costs, and expenses of the Settlement Administrator up to $150,000.  While the recovery achieved through the Settlement does not achieve a full recovery, the $20,000,000 Settlement Fund is an excellent result when considered in the context of TD Bank's vigorous defenses to liability and damages and the law in this area.

### f.     The Opinions of Class Counsel, Class Representatives, and Absent Settlement Class Members Strongly Favor Approval of the

Settlement.

The Court gives "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren,* 693 F. Supp. at 1060; *see also Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).  Class Counsel and the representative Plaintiffs believe that this Settlement is deserving of Final Approval, and the Court agrees.  Furthermore, the Court also finds it telling that of the 1,122 Settlement Class Members, none objected to, or opted out of, the Settlement.  *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (finding that a low percentage of objections "points to the reasonableness of a proposed settlement and supports its approval").

> **g.    The Residual *Cy Pres* Program is Reasonable and Appropriate.**

Under this Settlement, 100% of the Net Settlement Fund will be distributed to Settlement Class Members who had net investment losses and did not timely opt out.   Based on the plan for distribution, it is highly unlikely there will be any significant residual amounts.   Whatever amounts remain a year and 30 days after the Settlement Fund Payments have been distributed will be disbursed to a charity or not-for-profit  approved by the Court.   It is perfectly appropriate to provide for the distribution of any leftover monies through a residual *cy pres* program to third parties to be used for a purpose related to the class' injury.  *See In re Baby Products Antitrust Litig.*, 2013 WL 599662, at *4 (3d Cir. Feb. 19, 2013); *Lane v. Facebook, Inc.*, 696 F. 3d 811,

819-20 (9th Cir. 2012); *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F. 3d 24, 33-36 (1st Cir. 2009); *see also* 4 Herbert B. Newberg et al., *Newberg on Class Actions* § 11:20 (4th ed. 2012).

      **3.**      **The Settlement Class.**

This Court previously found the requirements of Rule 23(a) and 23(b)(3) satisfied in this Action as part of the preliminary approval of the settlement.  [D.E. 91]. The Court finds that: (a) the Settlement Class Members are so numerous that joinder of them is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims of the representative Plaintiffs are typical of the claims of the Settlement Class; (d) the representative Plaintiffs and Class Counsel fairly and adequately represent and protect the interests of the Settlement Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the present controversy.

      **4.**      **The Application for Service Awards to the Class Representatives is Approved.**

Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006).  "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives.  *See*, *e.g.*, *Ingram*, 200 F.R.D. at 694 (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive

award."); *Spicer v. Chi. Bd. Options Exchange, Inc.*, 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff). The factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). The Court finds that the Gevaerts Plaintiffs and the Schaffels Plaintiffs expended substantial time and effort in representing the Settlement Class, and deserve to be compensated for such time and effort. Therefore, the Court approves the requested service awards of $10,000 for the collective Gevaerts Plaintiffs and the collective Schaffels Plaintiffs, with the $20,000 total in Service Awards to be paid from the Settlement Fund.

### 5. Class Counsel's Application for Attorneys' Fees Is Granted.

Class Counsel requests a fee equal to thirty percent (30%) of the $20,000,000 Settlement Fund created through their efforts in litigating this case and reaching the Settlement. No Settlement Class Member has objected to Class Counsel's fee request. The Court analyzes Class Counsel's fee request under *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). As set forth below, after considering the *Camden I* factors, the Court concludes that Class Counsel's application for fees in the amount of $6,000,000, equal to thirty percent (30%) of the $20,000,000 Settlement Fund, is well justified and is granted.

### a. The Law Awards Class Counsel Fees from the Common Fund Created Through its Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit

doctrine is an exception to the general rule that each party must bear its own litigation costs.  The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts."  *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted).  The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant.  *Van Gemert*, 444 U.S. at 478.  As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole."  *Sunbeam*, 176 F. Supp. 2d at 1333 (citing *Van Gemert*, 444 U.S. at 478); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").

    In the Eleventh Circuit, class counsel is awarded a percentage of the fund generated through a class action settlement.  As the Eleventh Circuit held, "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case.  Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."  *Camden I*, 946 F.2d at 774.

    This Court has substantial discretion in determining the appropriate fee percentage awarded to counsel.  "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case."  *In re Sunbeam,* 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at

774).   However, "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund," although "an upper limit of 50 percent of the fund may be stated as a general rule."   *Id.* (quoting *Camden I*, 946 F.2d at 774-75); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30% and then adjusted the fee award higher based on the circumstances of the case).

Based on the findings below, this Court finds that Class Counsel is entitled to an award of thirty percent (30%) of the $20,000,000 Settlement Fund secured through its efforts.   Class Counsel achieved an excellent result and overcame numerous procedural and substantive hurdles to obtain this Settlement benefiting the Settlement Class.   Class Counsel undertook a risky and undesirable case and, through diligence, perseverance and skill, obtained an outstanding result. Class Counsel is to be commended and should be compensated in accord with its request, which is both warranted and reasonable given similar fee awards.   The Court firmly believes this kind of initiative and skill must be adequately compensated to insure that counsel of this caliber is available to undertake these kinds of risky but important cases in the future.   *See Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985).

> **b.    As Applied Here, the *Camden I* Factors Demonstrate the Requested Fee Is Reasonable and Justified.**

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-action counsel are:

> (1) the time and labor required;
>
> (2) the novelty and difficulty of the questions involved;
>
> (3) the skill requisite to perform the legal service properly;
>
> (4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and the length of the professional relationship with the client; and

(12) awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These twelve factors are guidelines; they are not exclusive.  "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action."  *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775).  In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case."  *Camden I*, 946 F.2d at 775.

### i.    Prosecuting The Claims Against TD Bank Required Substantial Time and Labor.

Investigating, prosecuting, and settling these claims demanded considerable time and labor.  Throughout the pendency of the Action, the internal organization of Class Counsel, including assignments of work, regular conference calls, and the management of a complex document review and coding project, ensured that Class Counsel was engaged in coordinated, productive work efforts to maximize efficiency and minimize duplication of effort.  Class

Counsel devoted a substantial amount of time investigating the claims against TD Bank and investigating the various entities involved in this international life settlement scheme.   This information was essential to Class Counsel's ability to understand the nature of TD Bank's conduct, along with the other defendants.   Class Counsel also expended significant resources researching, developing, pleading and prosecuting the legal claims at issue.

Once TD Bank's Motion to Dismiss was denied and discovery opened, Class Counsel served written discovery requests on TD Bank and the other defendants seeking relevant and probative documents and information.   The process of developing, refining, and finalizing such discovery requests – with an eye toward class certification, summary judgment, and trial – required considerable effort.   More than a million documents and data were produced, some in foreign languages.  Class Counsel established a large document review team consisting of dozens of attorneys whose task was to review, sort, and code the produced documents.   To make the review and subsequent litigation more efficient, Class Counsel instituted uniform coding procedures for electronic review of the documents produced, and team members remained in constant contact with each other to ensure that all counsel became aware of significant emerging evidence in real time.   Such document review efforts and coordination were plainly necessary and essential to obtaining this Settlement.   In addition, Class Counsel also took a key deposition of a TD Bank employee in its Anti-Money Laundering Division.

In the Spring of 2015, Plaintiffs' counsel and TD Bank initiated preliminary settlement discussions.   The preliminary discussions resulted in the scheduling of mediation.  On June 24, 2015, Plaintiffs' counsel and TD Bank participated in mediation with retired United States District Court Judge John Martin.   During that mediation, Plaintiffs and TD Bank reached agreement concerning the material terms of the Settlement.   Beginning July 15, 2015, the Plaintiffs and TD Bank executed a Settlement Agreement memorializing the terms of the

Settlement, subject to Court approval.  Class Counsel also engaged in subsequent settlement-related investigation to determine, among other things, the most appropriate method by which to implement the plan for allocation of the Settlement Fund to Settlement Class Members in the most efficient manner possible.

### ii.    The Issues Involved Were Novel and Difficult and Required the Exceptional Skill of a Highly Talented Group of Attorneys.

The attorneys on both sides of this case displayed a very high level of skill.  *See Walco*, 975 F. Supp. at 1472 (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I*, 946 F.2d at 772 n.3 (in assessing the quality of representation by class counsel, Court also should consider the quality of their opposing counsel.); *Johnson,* 488 F.2d at 718; *Ressler*, 149 F.R.D. at 654.  There can be no dispute that based on the novel and very complex issues confronted by Class Counsel in this case, detailed here and elsewhere, that an extraordinary group of lawyers was required to prosecute this case. The fact that this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee requested.  In the private marketplace, counsel of exceptional skill commands a significant premium.  So too should it here.

### iii.    The Claims Against TD Bank Entailed Considerable Risk.

The risks facing the Plaintiffs in this case have been discussed above, in the Motion, and elsewhere.  There were myriad ways in which Plaintiffs could have lost this case – yet they managed to achieve a successful Settlement.  A large amount of the credit for this must be given to Class Counsel's strategic choices, effort, and legal acumen.  "A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk.  Such aversion could be due to any number of things, including social opprobrium

surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is embodied by the term 'undesirable.'" *In re Sunbeam*, 176 F. Supp. 2d at 1336. In addition, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motor Corp.*, 860 F.2d 250, 258 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989). "Undesirability" and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 112 (3d Cir. 1976); *Walco*, 975 F. Supp. at 1473.

Prosecuting this lawsuit entailed significant risk. First, TD Bank asserted numerous and formidable defenses. Specifically, TD Bank argued that the Plaintiffs could not allege sufficient facts to carry their burden and demonstrate that TD Bank was liable to non-customers under the law. Second, TD Bank skillfully argued that the Settlement Class would not be able to establish the facts necessary to meet the high standard required to prove that TD Bank had actual knowledge of a fraud in order to hold TD Bank liable. Finally, TD Bank advanced a medley of other affirmative defenses that posed serious risks to the Settlement Class' claims. Each of these risks, alone, could have easily impeded Plaintiffs' and the Settlement Class' successful prosecution of these claims at trial and in an eventual appeal. The critical point for present purposes is that, heading into this case, Class Counsel confronted these issues without any assurances as to how the Court would rule. Class Counsel nonetheless accepted the case and the risks that accompanied it. Given the positive societal benefits to be gained from attorneys' willingness to undertake this kind of difficult and risky, yet important, work, such decisions must be properly incentivized. The Court believes, and holds, that the proper incentive here is a thirty percent (30%) fee based on the $20,000,000 Settlement Fund.

> iv.    **Class Counsel Assumed Substantial Risk to Pursue the Action on a Pure Contingency Basis, and Were Precluded From Other Employment as a Result.**

Class Counsel prosecuted the Action entirely on a contingent fee basis. In undertaking to prosecute this complex action on that basis, Class Counsel assumed a significant risk of non-payment or underpayment. Numerous cases recognize such a risk as an important factor in determining a fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548, *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler*, 149 F.R.D. at 656; *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135 (11th Cir. 1986); *York v. Alabama State Bd. of Education*, 631 F. Supp. 78, 86 (M.D. Ala. 1986).

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee here. As this Court has observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548.

The risks taken by Class Counsel have already been discussed. It is uncontroverted that the attorney time spent on the Action was time that could not be spent on other matters.

Consequently, this factor supports the requested fee.

### v.     Class Counsel Achieved an Excellent Result.

The Court finds that this Settlement is an excellent result.  The common fund created by this Settlement is $20,000,000.  Rather than facing more years of costly and uncertain litigation, 1,122 Settlement Class Members will receive an immediate cash benefit from the Settlement Fund representing a significant percentage of their most probable damages, *assuming* a Plaintiffs' verdict against TD Bank.  The Settlement Fund will not be reduced by the costs of Notice or Settlement administration up to $150,000.  Moreover, payments to the Settlement Class will be forthcoming automatically, with no requirement that Class members submit claims. Class Counsel's efforts in pursuing and settling these claims were, quite simply, outstanding.

### vi.     The Requested Fee Comports with Fees Awarded in Similar Cases.

Numerous recent decisions within this Circuit have awarded attorneys' fees up to and in excess of thirty percent.  *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3 % of $1.06 billion); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317-MDL-Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 % of settlement of over $30 million); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152-Civ-Gold (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3 % of settlement of $77.5 million); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million).  Accordingly, the Court finds that a fee of thirty percent (30%) of the $20,000,000 Settlement Fund, plus expenses, is appropriate here and comports with customary fee awards in similar cases.

                    **vii.**      **The Remaining *Camden I* Factors Also Favor Approving Class Counsel's Fee Request.**

The Court finds that the remaining *Camden I* factors further support Class Counsel's fee request, and so holds.  The burdens of this litigation and the relatively small size of the firms representing Plaintiffs lend support to the fee awarded.  This fee is firmly rooted in "the economics involved in prosecuting a class action."  *In re Sunbeam*, 176 F. Supp. 2d at 1333. Accordingly, the factual record in this case, and the Court's own observations, all of which are incorporated herein, compel the result required by this Order.

        **6.**      **Class Counsel's Application for Reimbursement of Litigation Costs and Expenses is Approved.**

Finally, the Court finds that Class Counsel's request for reimbursement of $300,666.95, representing certain out-of-pocket costs and expenses that Class Counsel incurred during the prosecution and settlement of the Action against TD Bank, is reasonable and justified.  These costs and expenses consists of, among others, fees for experts, photocopies, travel, online research, translation services, mediator fees, and document review and coding expenses.  The Court hereby approves Class Counsel's request for reimbursement of these costs and expenses. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970).  These costs and expenses, advanced by Class Counsel for the benefit of the Settlement Class, were necessarily incurred in furtherance of the litigation of the Action and the Settlement.   Accordingly, reimbursement of costs and expenses in the amount of $300,666.95 shall be made from the Settlement Fund after computation of attorneys' fees.

### CONCLUSION

For the foregoing reasons, the Court: (1) grants Final Approval of the Settlement; (2) appoints Plaintiffs Francois Robert Gevaerts, Paul Christian Holstein Gevaerts, Alexander Casper Holstein Gevaerts (collectively, "Gevaerts Plaintiffs"), Pieter Schaffels, and Schaffels

Beheer B.V. (collectively, "Schaffels Plaintiffs"), as class representatives for this Settlement; (3) appoints as Class Counsel and Settlement Class Counsel David M. Buckner, Esq., Seth E. Miles, Esq., Brett E. von Borke, Esq., and Ryan O'Quinn, Esq.; (4) awards Service Awards of $10,000 to the Gevaerts Plaintiffs and $10,000 to the Schaffels Plaintiffs to be paid from the common fund; (5) awards Class Counsel attorneys' fees in the amount of $6,000,000, equal to thirty percent (30%) of the $20,000,000 Settlement Fund, plus reimbursement of litigation costs and expenses in the amount of $300,666.95; (6) directs Settlement Class Counsel, Plaintiffs, and TD Bank to implement and consummate the Settlement pursuant to its terms and conditions; (7) retains continuing jurisdiction over Plaintiffs, the Settlement Class, and TD Bank to implement, administer, consummate and enforce the Settlement and this Final Approval Order; and (8) will separately enter Final Judgment dismissing the Action with prejudice.

DONE and ORDERED in chambers at Fort Pierce, Florida, this 5th day of November, 2015.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record
United States Magistrate Judge Dave Lee Brannon